FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 0 5 2009

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FLANIGAN'S ENTERPRISES, INC. OF         *
GEORGIA d/b/a Mardi Gras, 6420          *
ROSWELL RD., INC. d/b/a Flashers,       *    Case No.
and FANTASTIC VISUALS, LLC d/b/a        *
Inserection,                            *
                                        *  1  09-CV-2747
     Plaintiffs,                        *
                                        *
-vs-                                    *
                                        *               -RLV
CITY OF SANDY SPRINGS, GEORGIA,         *
                                        *
     Defendant.                         *

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NATURE OF CASE

1.

This case concerns an ongoing effort by the City of

Sandy Springs to shut down — or severely curtail — its adult

entertainment industry.  Either proposition offends the

First Amendment.  By adopting and enforcing content-based

laws, based predominately upon a distaste for erotic

messages (and perceived reactions to those messages), the

City has violated several doctrines of constitutional law.

The plaintiffs, who operate nude-dance establishments and

bookstore that sell sexually explicit media, seek

declaratory and permanent injunctive relief under 42 U.S.C.

§ 1983 for claims arising under the First and Fourteenth

Amendments to the United States Constitution (and similar

provisions of the Georgia Constitution).  Other claims are
set out below.

## PARTIES

2.

Plaintiff FLANIGAN'S ENTERPRISES, INC. OF GEORGIA
("Mardi Gras") is a corporation organized and existing under
the laws of the State of Georgia which owns and operates an
establishment offering nude dance entertainment and serving
alcoholic beverages for consumption on premises at 6300
Powers Ferry Road, Atlanta, Fulton County, Georgia 30339.

3.

Mardi Gras was, and is, the licensee for alcoholic
beverage licenses issued by both Fulton County and the State
of Georgia.

4.

Plaintiff 6420 ROSWELL RD., INC. ("Flashers") is a
corporation organized and existing under the laws of the
State of Georgia which owns and operates an establishment
offering nude dance entertainment and serving alcoholic
beverages for consumption on premises at 6420 Roswell Road,
Atlanta, Fulton County, Georgia 30339.  (Mardi Gras and
Flashers are sometimes referred to as "the Clubs.")

5.

Flashers employs Harry J. Freese as the licensee for the alcoholic beverage licenses issued by both Fulton County and the State of Georgia.

6.

Plaintiff FANTASTIC VISUALS, LLC d/b/ Inserection is a limited liability company organized and existing under the laws of the State of Georgia.  Inserection owned and operated an establishment which offered, for retail sale, sexually explicit, non-obscene media (e.g., books, video tapes and DVDs) (e.g., books, video tapes, DVDs) and other take-home products (e.g., sexual devices, toys, lubricants, adult novelty items) on its premises formerly at 7855 Roswell Road, Atlanta, Fulton County, Georgia 30350. (Inserection is sometimes referred to as "the Bookstore.")

7.

The establishments (mentioned above) operated by the plaintiffs are or were located within the corporate limits of the City of Sandy Springs, and the plaintiffs or their successors each have operated their property continuously as "adult entertainment" uses, as defined by Fulton County, Georgia, since before January 1, 1997.

8.

Defendant CITY OF SANDY SPRINGS ("the City") is a political subdivision of the State of Georgia which has the capacity to sue and to be sued.

VENUE

9.

All acts or omissions alleged in this complaint have occurred, or likely will occur, in the Northern District of Georgia and therefore venue is properly within this district under 28 U.S.C. § 1391(b).

JURISDICTION

10.

Jurisdiction for this suit is conferred in part by 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

11.

Affirmative injunctive relief is authorized by 28 U.S.C. § 1651.

12.

Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

13.

Attorney's fees are authorized by 42 U.S.C. § 1988.

14.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

FACTUAL AND PROCEDURAL BACKGROUND[1]

15.

Before July 1, 1992, the Clubs were among a few, easily-identifiable businesses operating in unincorporated Fulton County, Georgia ("Fulton County") which were licensed to sell alcoholic beverages and regularly featured live nude dance entertainment.

16.

In Fulton County, Georgia, and greater Atlanta area

---

[1] A legend identifying parties and ordinances is attached as Exhibit A.

nude dancing is traditionally offered in a nightclub setting
where alcoholic beverages are offered for consumption on
premises.

17.

In July 1992, Fulton County adopted Ordinance 92-RM-
295, which amended the Fulton County Zoning Resolution by
adding Article 19 (Adult Entertainment Facilities) and
revising Article 3 (definitions for adult uses).

18.

Also in July 1992, Fulton County adopted Ordinance 92-
RC-336 (codified as Fulton County Code § 6-225(b)), which
grandfathered the Clubs as non-conforming uses because they
held "an existing license to sell alcoholic beverages on the
premises and also offered adult entertainment" before July
15, 1992. That ordinance provided:

> No person, firm, corporation, or partnership which
> offers adult entertainment shall be granted a
> license to sell alcoholic beverages for
> consumption on the premises unless said
> establishment meets the requirements of the Zoning
> Resolution of Fulton County pertaining to adult
> entertainment establishments. As used herein, the
> definition of adult entertainment establishment is
> set forth in section 3.3.1 of the Zoning
> Resolution of Fulton County. No person, firm,
> corporation, or partnership which holds an
> existing license to sell alcoholic beverages for
> consumption on the premises, as of July 15, 1992,
> shall be allowed to offer adult entertainment
> unless said establishment complies with the

provisions of the Zoning Resolution of Fulton
County, provided that any person, firm,
corporation, or partnership which holds an
existing license to sell alcoholic beverages on
the premises and also offered adult entertainment,
as a lawful use prior to July 15, 1992, shall not
be required to comply with the provisions of the
Zoning Resolution of Fulton County, but shall be
required to obtain an adult entertainment license.

19.

In 1996, the Bookstore began operating at its existing
location.  At all times, the Bookstore has dedicated its
land uses exclusively to operating a retail store which sell
video tapes and DVDs, toys, lubricants, oils and other
novelties commonly associated with adult-oriented product
lines.

20.

For years after Ordinance 92-RC-336 was adopted, the
plaintiffs operated without any hint of interruption until
April 1997, when Fulton County announced its intent to adopt
an ordinance banning adult entertainment in establishments
licensed to serve alcoholic beverages for consumption on
premises ("the 1997 Ordinance").

21.

On December 17, 1997, Fulton County adopted the 1997
Ordinance, which provided in part:

Any person, firm, partnership, or corporation

licensed hereunder shall comply with the following
rules and regulations pertaining to the operation
of the adult entertainment establishment:

. . .

    (7)   No licensee shall permit any
alcoholic beverages to be
served, offered, or consumed
on the premises.

22.

In mid-1998, the Clubs sued Fulton County, seeking

declaratory and injunctive relief from the enactment and

threatened enforcement of the 1997 Ordinance.  Flanigan's

Enters. of Ga., Inc. v. Fulton County, No. 1:98-cv-2441-GET

(N.D. Ga. filed Aug. 25, 1998)("Flanigan's I").

23.

At issue in Flanigan's I was whether the 1997

Ordinance's ban on nude dancing in alcohol-licensed venues,

particularly in nightclubs (which depend upon alcohol sales

for financial viability), violated the Free Speech Clause.

24.

On February 20, 2001, the United States Court of

Appeals for the Eleventh Circuit concluded that the 1997

Ordinance violated the First Amendment.  See Flanigan's

Enters., Inc. of Georgia v. Fulton County, 242 F.3d 976

(11th Cir. 2001).

25.

In holding the 1997 Ordinance offensive to the First
Amendment, the Eleventh Circuit began its analysis by noting
that it could find "no basis" for Fulton County's contention
that the court could merely "presume the evidence needed to
meet the second prong [furthering a governmental interest]
of the O'Brien test."   The court also observed that the
businesses had "challenged and disproved the board's
findings."  Accordingly, the court concluded that, in the
language of Renton v. Playtime Theatres, Inc., 475 U.S. 41
(1986), "it was unreasonable for [Fulton County] to have
relied upon remote, foreign studies concerning secondary
effects when the county's own current, empirical data
conclusively demonstrated that such studies were not
relevant to local conditions."

26.

The Eleventh Circuit observed that, unlike the
circumstances of Renton, the situation in Fulton County was
not one where an adult business either did not exist or had
just moved to town; the adult businesses in Fulton County
had operated for nearly a decade.

27.

Undeterred by its violation of the First Amendment,

Fulton County, on July 12, 2001, notified the Clubs that it
had prepared a new "adult entertainment ordinance," which
would be read during public hearing on July 18, 2001.

28.

Unbeknownst to the Clubs, Fulton County's Police
Department had, once again, prepared a study of police calls
and reports associated with businesses licensed by Fulton
County to offer adult entertainment (including the Clubs) as
compared to other businesses licensed by Fulton County to
sell or serve alcoholic beverages ("the 2001 Police Study").
The 2001 Police Study addressed the period spanning January
1998 through December 2000.

29.

The 2001 Police Study concluded that "a lower number of
calls for service to adult entertainment establishments who
served alcoholic beverages than those non-adult
entertainment establishments who served alcoholic
beverages."  It also noted "no significant increase in part
one crimes at adult entertainment establishments" which
serve alcohol.  Based on these and other findings, the 2001
Police Study concluded that "adult entertainment
establishments who served alcoholic beverages did not have a
significant impact on the police department as it relates to

an increase in calls for police service, nor an increase in crime as a secondary affect [sic]."

30.

Not only could Fulton County's police department find "no statistical correlation" between the Clubs and calls for police service, it found "statistical data indicat[ing] that non-adult entertainment establishments who served alcoholic beverages had a higher rate of calls for service" than did the Clubs.

31.

On August 15, 2001, Fulton County adopted a comprehensive code of ordinances, entitled "Article III. Adult Entertainment Establishments," containing numerous provisions to license, zone, and otherwise regulate adult businesses in Fulton County ("the 2001 Ordinance").

32.

Like the 1997 Ordinance, the 2001 Ordinance prohibited any business holding an adult entertainment license (from Fulton County) from permitting alcoholic beverages to be served, offered, or consumed on the premises.

33.

Based on threats to enforce the 2001 Ordinance against them, the Clubs sued Fulton County.  See Flanigan's Enters.

of Ga., Inc. v. Fulton County, No. 1:01-cv-3109-RLV (N.D.
Ga. filed Nov. 21, 2001) ("Flanigan's II").  A key issue in
Flanigan's II, as in Flanigan's I, was whether the
ordinance's ban on nude dancing in alcohol-licensed venues,
particularly in nightclubs (which depend upon alcohol sales
for financial viability), violated the Free Speech Clause.

34.

In Flanigan's II, Fulton County moved for summary
judgment, arguing that the 2001 Ordinance's prohibition of
nude dancing in alcohol licensed establishments was
constitutional.  In denying the county's motion, the
District Court concluded that "[b]ecause the most
comprehensive analysis of the secondary effects of alcohol
consumption in adult entertainment establishments in Fulton
County indicated that there were more problems in non-adult
entertainment establishments that serve alcohol than in the
adult establishments ... [Fulton County] has not established
that the ordinance furthers an important government
interest."

35.

On November 13, 2008, the Court entered an order
finding that the Flanigan's II plaintiffs case were entitled
to $70,500, representing the annual license fees paid by

them for the years 2001 through 2006 as well as $143,437.17,
representing the amount of employee permit fees paid by them
for the years 2003 through 2007.  [Flanigan's II Doc. 119 at
2.]  On the same day, the Court entered judgment in favor of
the plaintiffs entitling them to "recover from defendants
the amount of $213,937.17 and the costs of this action."
[Flanigan's II Doc. 120.]

36.

Beginning in 1997, Fulton County sent the Bookstore a
renewal application for its business occupational tax
certificates ("the business renewal applications") on an
annual basis.  Each year, upon information and belief, the
Bookstore has confirmed that its business offers "adult
entertainment" as defined by Fulton County.  Fulton County
has recognized this land use annually, and it has repeatedly
issued the Bookstore its business occupational tax
certificate.

37.

On December 1, 2005, pursuant to 2005 Ga. Laws 35,
Defendant City of Sandy Springs ("the City") was
incorporated as a municipal corporation.

38.

On December 1, 2005, the City adopted Ordinance 2005-

12-01, which provides for the continuation of ordinances and laws during the transition period legislatively established for the City.

The Alcohol Code

39.

On December 1, 2005, the City adopted Ordinance 2005-12-03 ("the Alcohol Code"), which was a comprehensive scheme for licensing and regulating establishments which serve or sell alcoholic beverages within the City.

40.

Section 42 of the Alcohol Code provides: "Pursuant to The Constitution of the State of Georgia Article 3, Section 6, Paragraph VII:

    (a)   No person shall perform on a premises licensed hereunder acts of or acts which constitute or simulate...

        (2)   The touching, caressing, or fondling of the breast, buttocks, anus, or genitals; or

        (3)   The displaying of any portion of the female breast below the top of the areola or the displaying of any portion of any person's pubic hair, anus, cleft of the buttocks, vulva, or genitals.

    (b)   No person shall use on licensed premises artificial devices or inanimate objects to perform simulate, or depict any of the prohibited conduct or activities described in subsection (a) of this section.

Page 14

(c) It shall be unlawful for any person to show, display, or exhibit, on licensed premises, any film, still picture, electronic reproduction, or any other visual reproduction or image of any act or conduct described in subsection (a) or (b) of this section.

### 41.

Before adopting the Alcohol Code, the City did not consider any evidence to support a belief that Section 42 will serve or further a substantial governmental interest. Nor did the City make any legislative findings in support of Section 42.

### 42.

Upon information and belief, the Clubs and Maxim Cabaret (the other establishment licensed by Fulton County to offer adult entertainment and serve alcoholic beverages) are among the only establishments whose 2006 alcohol renewal applications were not honored by the City on or by December 27, 2005.

### 43.

The decision to single out the Clubs for disparate treatment was based, in substantial part, on Defendant's belief that nude-dance entertainment is illegal in alcohol-licensed establishments under the Alcohol Code.

44.

The decision to single out the Clubs for disparate treatment was based, in substantial part, on the City's belief that a "moratorium" on the issuance of business licenses to any businesses previously licensed by Fulton County to offer adult entertainment applied to alcoholic beverage licenses.

45.

The decision to single out the Clubs for disparate treatment was based, in substantial part, on the City's animosity toward nude-dance entertainment.

46.

The City, through its Mayor and City Council, ratified the City Manager's actions in refusing to process or approve the Clubs' alcohol renewal applications based upon an animus toward nude dancing.

47.

To the extent that the City did not ratify the actions of the City Manager, it delegated the decision as to which establishments the City will permit to sell alcoholic beverages without first obtaining a temporary or permanent license from the City.

The Adult Zoning Code

48.

On December 20, 2005, the City held the first reading
of Ordinance 2005-12-19 ("the Adult Zoning Code"), which is
a comprehensive set of ordinances regulating how, when, and
where adult entertainment establishments and adult
bookstores can locate and operate within the City.

49.

During the December 20, 2005 public hearing on the
Adult Zoning Code, the City did not present reliable
evidence of so-called adverse secondary effects of adult
entertainment establishments or adult bookstores.

50.

In the version of the Adult Zoning Code heard at the
first reading, adult entertainment establishments and adult
bookstores were limited to the following zoning districts:
M-1, C-1, and C-2.  That version of the proposed code also
required that any "adult entertainment" building be located
a minimum of 50 feet from all property lines.

51.

On December 22, 2005, the plaintiffs notified the City
to place a litigation hold (to avoid spoliation) on all
paper and electronic media relating to the plaintiffs or the

Page 17

subject of adult entertainment.

52.

Also on December 22, the plaintiffs requested documents
under Georgia's Open Records Act, including, but not limited
to:

(a)  All documents or records submitted to
     the City Council or Mayor by [the City
     Attorney] in support of the proposed
     adult entertainment ordinance;

(b)  All documents or records that will be
     reviewed by the City Council or Mayor
     relating to the December 27, 2005 public
     hearing; and

(c)  All proposed and adopted ordinances (and
     drafts) relating to or mentioning adult
     entertainment.

53.

On December 27, 2005, the City held the second reading
of the Adult Zoning Code.  On this night, the City adopted
the Adult Zoning Code, which subjected applicants
(businesses and employees) to a subjective permitting
process before a Use Permit will be issued.

54.

At the December 27 hearing, the City altered the
substance of the Adult Zoning Code, adding a zoning district
(M-2) in which adult entertainment establishments and adult
bookstores supposedly could operate.  Before this hearing,

Page 18

the City did not advertise that it was proposing to adopt an
ordinance which would allow adult entertainment in M-2
districts.

55.

Before the hearing of December 27, 2005, the City did
not deliver a written response to the plaintiffs (on the
12/22/05 Open Records Act request (¶ 52 above)), nor did the
City permit the plaintiffs inspect or copy any documents,
studies, testimony or other evidence upon which it was
allegedly relying in adopting either the Adult Zoning Code
or Adult Licensing Code (¶ 56 below).

The Adult Licensing Code

56.

On December 20, 2005, the City held the first reading
of Ordinance 2005-12-20 ("the Adult Licensing Code"), which
regulated and licensed adult entertainment establishments
and adult bookstores within the City.

57.

During the December 20, 2005 public hearing on the
Adult Licensing Code, the City did not present reliable
evidence of so-called adverse secondary effects of adult
entertainment establishments or adult bookstores.

58.

On December 27, 2005, the City held a second reading of the Adult Licensing Code.  On this night, the City adopted the Adult Licensing Code, which subjected applicants to a subjective licensing and permitting process before an adult entertainment license could be issued to a business, and before an adult entertainment permit will could issued to an employee.

59.

At the December 27, 2005 public hearing, the City did not present reliable evidence of so-called adverse secondary effects of adult entertainment establishments or adult bookstores.

Subsequent Legislative and Administrative Action

60.

In late January 2006, Mardi Gras filed an alcoholic beverage license application with the City.

61.

In early February 2006, Flashers filed an alcoholic beverage license application with the City.

62.

By letters dated March 3, 2006 the City's attorney notified Flashers and Mardi Gras that their alcohol license

applications had been denied for violating Section 42 of the
Alcohol Code and Section 3 of the Adult Licensing Code.   The
letters also notified the Clubs that they had a right to
appeal under then Section 19(b) of the Alcohol Code.

63.

About or week after sending these letters (¶ 62 above),
the City informed the Clubs that the letters were sent in
error, and that the Clubs could disregard the denial letters
without fear of penalty.

64.

By letter dated March 10, 2006, the City returned (by
U.S. Mail) in full Mardi Gras's alcohol license application.
The reasons offered by the City for returning the entire
application were that (1) an affidavit was missing, (2) the
alcohol license can only be issued to an individual, not a
corporation, and (3) for this reason, the application was
missing that individual's date of birth.

65.

By letter dated March 10, 2006, the City returned (by
U.S. Mail) in full Flashers's alcohol license application.
The reasons offered by the City for returning the entire
application were that (1) it did not state the type of
license sought, (2) there was an alteration on the affidavit

which was unacceptable, (3) "it is believed the residence
address of the owner is mis-stated [sic]", and (4) the
application was missing the owner's date of birth.

66.

Besides Maxim Cabaret, and upon information and belief,
these were the only alcoholic beverage license applications
that the City unilaterally decided to return (by U.S. Mail)
to the applicants during 2006.  On March 28, the Clubs
resubmitted their alcohol license applications with
corrections to all alleged errors noted in the City's
3/10/06 letters (¶¶ 64-65 above).

67.

By letters dated June 1, 2006, the City notified the
Clubs that Section 3 of the Adult Licensing Code prohibits
the licensee or any employees from permitting "any alcoholic
beverages to be served, offered, or consumed on the
premises."  In those letters, the City instructed the Clubs
to "make an election to obtain an Adult License or an
Alcoholic Beverage License by June 9, 2006."

68.

On June 13, 2006, the City held a first reading on
proposed amendments to both the Alcohol and Adult Licensing
Codes.  The proposed amendments to the Alcohol Code included

creating a license review board to handle the license hearing process. The proposed amendments to the Adult Licensing Code shorted the distance restrictions required between adult entertainment establishments and alcohol-licensed establishments.

69.

During the June 13, 2006 hearing on the proposed amendments to the Alcohol and Adult Licensing Codes, the City did not present reliable evidence of so-called adverse secondary effects of adult entertainment establishments or adult bookstores.

70.

On June 20, 2006, the City held a second reading on proposed amendments to both the Alcohol and Adult Licensing Codes, and adopted them both.

71.

During the June 20, 2006 hearing on the proposed amendments to the Alcohol and Adult Licensing Codes, the City did not present reliable evidence of so-called adverse secondary effects of adult entertainment establishments or adult bookstores.

72.

When the City adopted the Adult Licensing and Zoning

Codes, the Clubs were among a few, identifiable businesses which, on November 30, 2005, were licensed by Fulton County to sell alcoholic beverages and feature adult entertainment.

73.

When the City adopted the Adult Licensing and Zoning Codes, the Bookstore was among a few businesses which, on November 30, 2005, were licensed by Fulton County to sell or rent pre-recorded video tapes featuring sexually explicit entertainment, and which dedicated their land use to "adult entertainment," as defined by Fulton County.

74.

When the City adopted the Adult Licensing and Zoning Codes, the City knew, or should have known, that these codes would both uniquely and adversely affect the plaintiffs, who are an easily identifiable group of businesses.

75.

In good-faith reliance on Fulton County's approval of their zoning and licensing applications, the plaintiffs invested substantial amounts of time, effort and money toward improving their property (e.g., buildings, goodwill) for the single purpose of either operating nude dancing establishments selling alcoholic beverages, or operating an adult entertainment bookstore.

76.

On June 6, 2006, the City held a first reading on an ordinance to amend Chapter 12, Offenses and Violations, Article 1: General Prohibitions, Section 2, Offenses against public morals, by adding subsection (g) Obscenity and Related Offenses ("the Obscenity Ordinance").  The Obscenity Ordinance bans, under certain circumstances, the sale and advertising of "any device designed or marketed as useful primarily for the stimulation of human genital organs.

77.

On June 30, 2006, based on threats to enforce the Alcohol, Zoning, and Licensing Codes against them, the plaintiffs sued the City.  See Flanigan's Enters. of Ga., Inc. v. Sandy Springs, No. 1:06-cv-1506-RLV (N.D. Ga. filed June 30, 2006) ("Flanigan's III").

78.

On August 15, 2006, the City held a second reading on the Obscenity Ordinance, and adopted it.

79.

During the June and August 2006 hearings on the Obscenity Ordinance, the City did not present (or rely on) evidence showing that the advertising ban in the ordinance would directly or materially advance a substantial

governmental interest, or that the ordinance's advertising ban was narrowly tailored to fit any legitimate interest.

80.

The Bookstore possesses a good-faith belief that, in light of events surrounding the adoption of the Obscenity Ordinance, the City will arrest, prosecute or take other adverse administrative actions against it (and its managers and employees), which actions will be arbitrary, outside the scope of clearly established constitutional doctrine, and otherwise calculated to chill the display, advertising and sale of sexual devices by its establishment.

Ordinance 2007-09-54

81.

On September 18, 2007, the City adopted Ordinance 2007-09-54 ("the Revised Alcohol Code"), which is a comprehensive set of ordinances regulating how, when, and where alcoholic beverages may be sold and served within the City.

82.

The Revised Alcohol Code replaced the Alcohol Code in its entirety.

83.

The Revised Alcohol Code provided in part:

Prohibited Acts, Sexual Display on Licensed Premises.

Page 26

. . .

(d)   No licensee shall use any person, in any capacity, in the sale or service of alcoholic beverages while such person is unclothed or in such attire, costume or clothing, as to expose to view any portion of the female breast below the top of the areola or of any portion of the male or female pubic hair, anus, cleft of the buttocks, vulva, and genitals.

(e)   No licensee shall allow live entertainment where any person appears in the manner described in subsection (d) of this section, or where such person performs acts of or acts which simulate any of the following:

    (1)   Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any sexual act prohibited by law.

    (2)   The caressing or fondling of the breast, buttocks, anus, or genitals.

    (3)   The displaying of the male or female pubic hair, anus, vulva, or genitals.

(f)   No licensee shall allow the use of artificial devices or inanimate objects to perform, simulate, or depict any of the prohibited conduct or activities described in subsection (e) of this section.

(g)   No licensee shall allow the holding, promotion, or sponsoring of any contest, promotion, special night, event, or any other activity where patrons of the licensed establishment are encouraged or allowed to engage in any of the conduct described in subsections (d) or (e) of this section.

(h)   No licensee shall allow to be shown, displayed, or exhibited any film, still

picture, electronic reproduction, or image of
any act or conduct described in subsection
(e) of this section.

(i)  Nothing contained in subsections (d) through
(h) of this section shall apply to the
premises of any mainstream performance house,
museum or theatre which derives less than 20
percent of its gross annual income from the
sale of alcohol beverages. A mainstream
performance house means a building where
conventional performances are presented.

84.

On or before adopting the Revised Alcohol Code, the

city council did not present or consider reliable evidence

of so-called adverse secondary effects of adult

entertainment establishments or adult bookstores.

Ordinance 2008-08-38

85.

On August 19, 2008, the City held a reading of

Ordinance 2008-08-38, which changed the Adult Zoning Code by

defining "adult bookstore[s]," "adult business[es]," "adult

entertainment establishment[s]," and "adult

establishment[s]," among other land uses, and regulates how,

when, and where these businesses can locate and operate

within the City.

86.

During the August 19 reading of Ordinance 2008-08-38,

the City did not present reliable evidence of so-called adverse secondary effects of adult entertainment establishments or adult bookstores.

87.

When adopting Ordinance 2008-08-38, the City did not follow the procedures established under O.C.G.A. § 36-66-1, et seq. for adopting zoning ordinances.

### Ordinance 2008-08-39

88.

On August 19, 2008, the City held a reading of Ordinance 2008-08-39, which changed the Adult Zoning Code by altering set-back requirements in certain zones.

89.

Ordinance 2008-08-39 also inserted a setback requirement between adult establishments that feature adult entertainment from "any premises authorized and licensed to sell alcoholic beverages ... for consumption on the premises."

90.

Ordinance 2008-08-39 required that adult bookstores and adult entertainment establishments obtain an administrative permit before any "final land disturbance permit, building permit, certificate of occupancy, or building permit review

certificate may be issued until the approved City of Sandy Springs Adult Entertainment Business License is filed with the Director of the Department of Community Development."

91.

During the August 19 reading of Ordinance 2008-08-39, the City did not present reliable evidence of so-called adverse secondary effects of adult entertainment establishments or adult bookstores.

92.

When adopting Ordinance 2008-08-39, the City did not follow the procedures established under O.C.G.A. § 36-66-1, et seq. for adopting zoning ordinances.

Ordinance 2008-08-41

93.

On August 19, 2008, the City held a reading of Ordinance 2008-08-41, which, had the effect of "replacing in its entirety Article II of Chapter 26" of the City's ordinances. Among other things, it imposed additional location restrictions for adult entertainment establishments by restricting them to certain zoning districts and imposing setback requirements from sensitive uses and zoning districts. It also changed the text of the zoning ordinance by defining "adult bookstore[s]," "adult business[es],"

"adult entertainment establishment[s]," and "adult establishment[s]," among other land uses, and regulated how, when, and where these businesses could locate and operate within the City.

94.

Ordinance 2008-08-41 imposed a license requirement before an adult bookstore or an adult establishment may begin offering adult entertainment.  For an adult entertainment license application to be considered by the City, the applicant was first required to produce "certification from the community development director or his designee of approved conditions of zoning pertaining to the property to be licensed [and] provide applicable administrative permits...."

95.

During the August 19 reading of Ordinance 2008-08-41, the City did not present reliable evidence of so-called adverse secondary effects of adult entertainment establishments or adult bookstores.

96.

When adopting Ordinance 2008-08-41, the City did not follow the procedures established under O.C.G.A. § 36-66-1, et seq. for adopting zoning ordinances.

97.

The City has since enforced key provisions of its Adult License and Zoning Codes, including requiring fingerprinting and clearance letters for persons wishing to work at adult establishments.  The plaintiffs have been, and are, paying most of these permit and investigation fees for their workers.

### Ordinance 2009-04-22

98.

On April 21, 2009, the City held a reading of Ordinance 2009-04-22 ("the 2009 Adult Zoning Code"), which, among other things, changes the text of the Adult Zoning Code by deleting the following definitions: "Adult business," "adult dancing establishment," "adult hotel or motel," "adult mini-motion picture theater," "adult movie house," "encounter center or rap establishment," "erotic dance establishment," "explicit media outlet," "sexual conduct," and "sexually explicit nudity"; changing the definition of "adult entertainment establishment," "adult establishment," "adult motion picture arcade," "adult motion picture theater," and "specified sexual activities"; adding new definitions of "specified anatomical areas" that affect how, when, and where these businesses can locate and operate within the

City.  This ordinance also changed Section 6, § 19.3.20
(Adult Establishments) and deleted Section 6, § 19.3.21
(similar) of Ordinance 2008-09-39.

99.

During or immediately before the April 21 reading of
the 2009 Adult Zoning Code, the City did not present
reliable evidence of so-called adverse secondary effects of
adult bookstores, adult entertainment, adult entertainment
establishment, or adult establishments.

100.

When adopting the 2009 Adult Zoning Code, the City did
not follow the procedures established under O.C.G.A. §
36-66-1, et seq. for adopting zoning ordinances.

101.

Under the 2009 Adult Zoning Code, a new adult
establishment use may file an application for an
Administrative Permit (§ 19.3.20(C)), but an existing adult
entertainment use is ineligible for an Administrative
Permit.

102.

A new or proposed adult establishment use may petition
the Board of Zoning Appeals for a variance to the
Administrative Permit standards (§ 19.2.2), but an existing

Page 33

adult entertainment use is ineligible for a variance to the Administrative Permit.

<u>Ordinance 2009-04-23</u>

103.

On April 21, 2009, the City adopted Ordinance 2009-04-23 ("the 2009 Alcohol Code"), which amends §§ 6-135 and 6-138 of the Revised Alcohol Code.

104.

The 2009 Alcohol Code, under § 6-135, provides in part:

<u>Prohibited Acts; sexual display on licensed premises.</u>

. . .

(d)   No licensee shall suffer or permit any person to engage in live conduct exposing to the public view the person's genitals, pubic area, vulva, anus, anal cleft or cleavage or buttocks, or any portion of the female breast below the top of the areola on the license premises.

(e)   No licensee shall allow any person to engage in sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any sexual act prohibited by law, on the licensed premises.

(f)   Exception. Nothing contained in subsection (d) of this section shall apply to the premises of any theatre, concert hall, art center, museum, or similar establishment primarily devoted to the arts or theatrical performances, where the performances that are presented are expressing matters of serious literary, artistic, scientific, or political value.

105.

On or immediately before adopting the 2009 Alcohol
Code, the City Council did not present or reliable consider
evidence of so-called adverse secondary effects of adult
entertainment establishments or adult bookstores.

### Ordinance 2009-04-24

106.

On April 21, 2009, the City adopted Ordinance 2009-04-
24 (the "2009 Obscenity Ordinance"), which amended the
Obscenity Ordinance (see ¶ 76) and § 38-119 of Chapter 38,
Offenses and Miscellaneous Provisions, of the City's Code of
Ordinances.  The proposed changes amended § 38-119 by
defining "public indecency" to provide:

> It shall be unlawful for any person to perform any
> of the following acts in a public place: (1)
> exposure of one's genitals, or of one's breasts,
> if one is female, except in a place designed for
> same.

107.

The 2009 Obscenity Ordinance recasts § 38-120 defining
"obscenity and related offenses" to provide:

> (a)  A person commits the offense of distributing
>      obscene material when the following occurs:
>
>      (1)  He sells, rents, or leases to any person
>           any obscene material of any description,
>           knowing the obscene nature thereof, or
>           offers to do so, or possesses such

Page 35

material with the intent to so do,
provided that the work "knowing," as
used int his section shall be deemed to
be either actual or constructive
knowledge of the obscene contents of the
subject matter.

(2)   A person has constructive knowledge of
the obscene contents if he has knowledge
of facts which would put a reasonable
and prudent person on notice as to the
suspect nature of the material.

(3)   The character and reputation for the
individual charged with an offense under
this law, and the character and
reputation of the business establishment
involved may be placed in evidence by
the defendant on the question of intent
to violate this law. Undeveloped
photographs, molds, printing plats, and
the like shall be deemed obscene
notwithstanding that processing or other
acts may be required to make the
obscenity patent or to disseminate it.

(b)   Material is obscene if:

(1)   To the average person, applying
contemporary community standards, taken
as a whole, it predominantly appeals to
the prurient interest, that is a
shameful or morbid interest in nudity,
sex, or excretion;

(2)   The material taken as a whole lacks
serious literary, artistic, political,
or scientific value; and

(3)   The material depicts or describes, in a
patently offensive way, sexual conduct
specifically defined as follows:

a.   acts of sexual intercourse,
heterosexual or homosexual, normal

or perverted, actual or simulated;

b.    acts of masturbation;

c.    acts involving excretory functions or lewd exhibition of the genitals;

d.    acts of bestiality or the fondling of sex organs of animals; or

e.    sexual acts of flagellation, torture, or other violence indicating a sadomasochistic sexual relationship.

(c)    Any device designed or marketed as useful primarily for the stimulation of human genital organs is obscene material under this section. However, nothing in this subsection shall be construed to include a device primarily intended to prevent pregnancy or the spread of sexually transmitted diseases.

(d)    It is an affirmative defense under this section that selling, renting, or leasing the material was done for a bona fide medical, scientific, educational, legislative, judicial, or law enforcement purpose.

(e)    A person who commits the offense of distributing obscene material shall be guilty of a violation of this Code.

108.

On or immediately before adopting the 2009 Obscenity Ordinance (notably § 138-20(c)), the City Council did not present or consider any evidence that restricting the "marketing" – which presumably includes "advertising" – of a device as useful primarily for the stimulation of human

genital organs directly or materially advances a legitimate

governmental interest.

<u>Ordinance 2009-04-25</u>

109.

On April 21, 2009, the City adopted Ordinance 2009-04-

25 ("the 2009 Adult Licensing Code"), which, among other

things, imposes additional location restrictions for adult

entertainment establishments by restricting them to certain

zoning districts and imposing setback requirements from

sensitive uses and zoning districts.  It also changes the

text of the Adult Licensing Code by defining "adult

bookstore[s]," "adult business[es]," "adult entertainment

establishment[s]," and "adult establishment[s]," among other

land uses, and regulates how, when, and where these

businesses can locate and operate within the City.

110.

The City has begun enforcing key provisions of the 2009

Adult Zoning Code, the 2009 Alcohol Code, and 2009 Adult

Licensing Code, including requiring fingerprinting and

clearance letters for person who wish to work at adult

establishments.

111.

On or immediately before adopting the 2009 Adult

Licensing Code, the City Council did not present or consider reliable evidence of so-called adverse secondary effects of adult entertainment establishments or adult bookstores.

112.

The membership of the City Council has changed since adoption of the Adult Zoning Code and Adult Licensing Code, i.e., the City Council that entertained testimony and other evidence in 2005 preceding the adult legislation comprises different members today.

113.

The plaintiffs have exhausted whatever administrative remedies are available to them or, to the extent that any such remedies have not been exhausted, these remedies would be futile for the plaintiffs to pursue.

114.

The plaintiffs have no adequate remedy at state law.

115.

At all times, the City has acted under color of state law.

<u>COUNT 1</u>

<u>42 U.S.C. § 1983: DUE PROCESS CLAUSE VIOLATIONS UNDER</u>
<u>FEDERAL AND GEORGIA CONSTITUTIONS</u>

116.

The plaintiffs reallege each fact set forth in
paragraphs 1 through 115 of this complaint and incorporate
them here by reference.

117.

The actions of the City have deprived, and will
continue to deprive, the plaintiffs of property rights and
liberty interests protected by the Due Process Clause of the
Fourteenth Amendment to the United States Constitution, and
corresponding provisions of Georgia Constitution, in that,
inter alia:

> (a)   the Revised Code Alcohol Code (§§ 6-103 and 6-111)
>        and the 2009 Alcohol Code are vague as-applied and
>        facially and arbitrary and capricious because they
>        vest the City with discretion to deny or revoke an
>        alcohol license based upon subjective criteria
>        (Ga. Const. Art. 1, § 1, ¶ 1 only);
>
> (b)   because the 2009 Adult Licensing Code (see § 26-
>        37) and 2009 Adult Zoning Code (§ 4.3.1, et. seq.)
>        fail to include a "grandfather" provision
>        recognizing the plaintiffs' prior legal
>        nonconforming uses in adult entertainment, they
>        deprive the plaintiffs of a property and liberty

interests by illicit means that are pretextual, arbitrary and capricious, and without any rational basis, in violation of the due process clause (Ga. Const. Art. 1, § 1, ¶ 1 only);

(c) Section 26-37(c) of the 2009 Adult Licensing Code establishes an arbitrary and capricious standard because, although adopted on April 21, 2009, it requires that an application for extended amortization have been filed with the City Council "within 120 days after January 1, 2006," and it fails to establish clear and objective guidelines for determining how and when to grant the up-to-five year amortization extension;

(d) because the issue of whether a law prohibiting the plaintiffs from offering nude dance entertainment in their alcohol-licensed establishments has been litigated in a court of competent jurisdiction, and because that court rendered a final judgment against Fulton County (with which the City stands in privity), that issue is barred under settled principles of state and federal res judicata and collateral estoppel, rendering the City's effort to achieve a contrary result offensive to the

substantive due process clause (Ga. Const. Art. 1,
§ 1, ¶ 1 only); and

(e)   the 2009 Obscenity Ordinance, § 1 (codified as §
      38-119), is vague as applied to the plaintiffs
      because it does not indicate who or how "a place
      designed [sic]" to expose "one's genitals, or ...
      one's breasts, if female";

(f)   the 2009 Obscenity Ordinance, § 2 (codified as §
      38-120(c)), is vague as applied to the Bookstore
      because it is unclear whose intent matters
      regarding the purpose or intended use of the
      device;

(g)   the 2009 Obscenity Ordinance, § 2 (codified as §
      38-120(c)), violates the substantive due process
      clause of the Georgia and Federal Constitutions
      because it unjustifiably infringes on a deeply-
      rooted privacy interest in one's ability to
      acquire and self-use a sexual device, as revealed
      by the underinclusive affirmative defenses offered
      under subsection (d) of the ordinance;

(h)   the 2009 Obscenity Ordinance, § 2 (codified as §
      38-120(d)), is vague as applied to the Bookstore
      because it conflicts with subsection (c) insofar

as it allows the recipient or user of a device to shift the "primarily intended" use of that device on an arbitrary and capricious basis;

(i) because subsection (d) of the 2009 Obscenity Ordinance, which offers an affirmative defense, is unconstitutionally void for vagueness, both facially and as applied, under the Georgia and Federal Constitutions, the 2009 Obscenity Ordinance is invalid in its entirety under Georgia law; and

(j) the 2009 Alcohol Code, § 1 (codified as § 6-135), is vague as applied to the Clubs because it prohibits a licensee from permitting a "breach of the peace; lewd, immoral, or improper entertainment, conduct, or practices; or noise which is disturbing to the surrounding neighborhood," see § 6-135(c), and its nudity ban excepts only "the premises of any theatre, concert hall, art center, museum, or similar establishment primarily devoted to the arts or theatrical performances ... expressing matters of serious literary, artistic, scientific, or political value." see § 6-135(f).

Page 43

118.

The City has deprived the plaintiffs of their property right and liberty interests to offer nude dance entertainment or to purvey sexually explicit media.

119.

The denial of constitutional rights is irreparable injury per se, entitling the plaintiffs to permanent injunctive relief.

## COUNT 2

### 42 U.S.C. § 1983: FREE SPEECH CLAUSE VIOLATIONS

120.

The plaintiffs reallege each fact set forth in paragraphs 1 through 115 of this complaint and incorporate them here by reference.

121.

The actions of the City have deprived, and will continue to deprive, the plaintiffs of property rights, liberty interests, and freedom of expression, protected by the Free Speech Clause of the First and Fourteenth Amendments to the United States Constitution, and corresponding provisions of the Georgia Constitution, in that, inter alia:

(a)   the 2009 Adult Licensing Code (§ 26-28(b)(4), (6)

and (7)) and the 2009 Adult Zoning Code (§ 19.3.20(C)(5)) fail to mandate prompt decision-making by the licensing authority;

(b) the 2009 Adult Licensing Code and 2009 Adult Zoning Code, taken together, fail to provide for adequate alternative avenues of communication for sexually oriented expression;

(c) the 2009 Alcohol Code (and § 6-111 of the Revised Alcohol Code), the 2009 Adult Licensing Code (§§ 26-23(a), 26-24(b)(6), 26-26(c) and 26-28)) and the 2009 Adult Zoning Code (§ 19.3.20(B)(5)) will reduce both the quantity and accessibility of erotic speech and expression within the City in part by banning alcohol consumption when viewing nude dance entertainment and in part by amortizing City's the only adult businesses without offering them viable relocations;

(d) the 2009 Adult Licensing Code (§ 26-25(e)) imposes a prior restraint or tax on protected expression insofar as it requires employees and independent contractors to pay an unknown permit fee before one can offer erotic performances or work in a venue that offers erotic performances;

(e)   the 2009 Adult Zoning Code (§ 19.3.20(C)(5))
      imposes a prior restraint on protected expression
      because it vests the Director of the Community
      Development Department with too much discretion to
      deny an administrative permit application as
      incomplete;

(f)   by mandating at times that distances (from
      arbitrarily-selected sensitive uses) be measured
      from "property line" to "property line," while at
      other times those distances be measured from
      "public entrance" to "public entrance," the 2009
      Adult Licensing Code (§ 26-23) and the 2009 Adult
      Zoning Code (§ 19.3.20(B)) fail to serve or
      further a substantial governmental interest, and
      are not narrowly tailored to avoid unlawful
      infringement of speech or expression;

(g)   the Revised Alcohol Code (§§ 6-103, 6-111), the
      2009 Adult Licensing Code (§ 26-28(b)(4) and the
      2009 Adult Zoning Code (§ 19.3.20(B)(3) and (4)),
      as applied to adult entertainment establishments,
      vest the City with unbridled discretion to
      discriminate against speech based on content and
      thus impose an illegal prior restraint;

(h)   the following provisions of § 26-22 of the 2009 Adult Licensing Code, as applied to the location and conduct restrictions in that code, sweep substantially more protected speech or conduct within their ambit than is necessary, thus chilling the exercise of rights protected by the Free Speech Clause and rendering these code sections unconstitutionally overbroad: "adult entertainment"; "church, temple, or place of worship"; "golf course"; "library"; and "specified anatomical areas"; as well as § 26-29(d); and

(i)   the plaintiffs incorporate the allegations from ¶ 117 (c), (e), and (j) here by reference to show that these code provisions are calculated to chill expression, fail to serve or further a substantial governmental interest, and are not narrowly tailored to avoid unlawful infringement.

122.

The allegations set forth in paragraphs 119 (a) through (j) also violate the free speech provisions of the Georgia Constitution (Art. 1, § 1, ¶ 5).

123.

The plaintiffs are engaged in activities protected

under the First Amendment, i.e., offering nude-dance
entertainment and selling non-obscene, sexually explicit
media.

124.

By adopting and enforcing Ordinances 2008-08-38, 2008-
08-39 and 2008-08-41, and portions of the 2009 Alcohol Code,
and the 2009 Adult Licensing Code, the City has deprived the
plaintiffs of their rights and liberty interests to offer
nude-dance entertainment and sell sexually explicit media.

125.

The denial of constitutional rights is irreparable
injury per se, entitling the plaintiffs to permanent
injunctive relief.

COUNT 3

42 U.S.C. § 1983:  FEDERAL COLLATERAL ESTOPPEL

DOCTRINE VIOLATION

126.

The plaintiffs reallege each fact set forth in
paragraphs 1 through 115 of this complaint and incorporate
them here by reference.

127.

The plaintiffs are located in buildings (and of course
on land) which was situated in unincorporated Fulton County.

Page 48

That land became a part of the City of Sandy Springs.

128.

In both <u>Flanigan's I</u> and <u>Flanigan's II</u>, the Court determined that it was unreasonable for Fulton County to rely on remote, foreign studies concerning adverse secondary effects when the County's empirical data showed that such studies were not relevant to local conditions.  (<u>See</u> ¶¶ 25-26 and 34 above.)

129.

The plaintiffs' locations in <u>Flanigan's I</u> and <u>Flanigan's II</u> remain the same; the land that is now the City is the same land that was unincorporated Fulton County.

130.

The issue — the existence vel non of undesirable secondary effects relating to presenting or viewing nude dancing and serving or consuming alcoholic beverages — is identical to the one involved in and actually litigated in <u>Flanigan's I</u> and <u>Flanigan's II</u>.

131.

The Court's determination that undesirable secondary effects could not be reasonably believed to exist in Fulton County was a critical and necessary part of the judgments in both <u>Flanigan's I</u> and <u>Flanigan's II</u>.

132.

Because the City is in privity with Fulton County, which enjoyed a full and fair opportunity to litigate the issue in the prior proceedings, the City is precluded from re-litigating the specific question of adverse secondary effects relating to nude-dancing in alcoholic beverage venues in this Court.

COUNT 4

THE GEORGIA CONSTITUTION: IMPAIRMENT OF CONTRACTS

133.

The plaintiffs reallege each fact set forth in paragraphs 1 through 115 of this complaint and incorporate them here by reference.

134.

The actions of the City have deprived, and will continue to deprive, the plaintiffs of property rights and liberty interests in violation of O.C.G.A. § 36-35-6(b) and Art. I, § 3, ¶ 1 of the Georgia Constitution, in that, inter alia:

    (a) because the plaintiffs enjoy a vested right in
        operating as "adult entertainment" establishments
        as defined by Fulton County's ordinances, they
        have entered into long-term lease agreements and

invested substantial amounts of time, effort and
money toward developing and maintaining their
businesses for the exclusive land use of adult
entertainment; and

(b)   because the Clubs timely filed their alcohol
renewal applications (which were accepted by
Fulton County), and because the Clubs shared an
expectation with Fulton County that their alcohol
and adult licenses would be renewed absent a
violation of relevant law, the Clubs expended
substantial amounts of time, effort and money
toward developing and maintaining their businesses
for the exclusive land use of a nightclub which
offers adult entertainment (as defined by Fulton
County).

### 135.

The denial of constitutional rights is irreparable
injury per se, entitling the plaintiffs to permanent
injunctive relief.

### COUNT 5

### EQUITABLE ESTOPPEL

### 136.

The plaintiffs reallege each fact set forth in

paragraphs 1 through 115 of this complaint and incorporate them here by reference.

### 137.

In late 2005, Fulton County notified the Clubs that they could renew their alcoholic beverage licenses so long as they were filed (with the appropriate fees) on or before November 15, 2005.

### 138.

In late 2005, Fulton County notified the Clubs that they could renew their adult entertainment licenses so long as they were filed (with the appropriate fees) on or before November 1, 2005.

### 139.

In detrimental reliance upon these affirmative representations and acts of Fulton County, the plaintiffs have invested substantial amounts of their time, effort and money toward securing and improving their businesses in order to be able to sell beer, wine and liquor, while offering nude dance entertainment, and to sell sexually explicit media.

### 140.

By assuming Fulton County's role in matters of licensing and permitting alcoholic beverages and adult

entertainment, the City is equitably estopped from denying or otherwise refusing to honor the 2006 renewal applications at issue.

## COUNT 6

### ATTORNEY'S FEES

#### 141.

The plaintiffs reallege each fact set forth in paragraphs 1 through 115 of this Complaint and incorporate them here by reference.

#### 142.

The actions of Defendant in adopting and enforcing patently unconstitutional regulatory scheme in a patently unconstitutional manner entitle the plaintiffs to recover their costs and reasonable attorney's fees in an amount to be determined at trial.

**WHEREFORE**, the plaintiffs pray:

(a)  That as to Counts 1 through 5, of this Complaint, the Court grant the plaintiffs declaratory and permanent injunctive relief;

(c)  That as to Count 6 of this Complaint, the Court award the plaintiffs their reasonable costs and attorney's fees in bringing this action in an

Page 53

amount to be determined at trial;

(d)   a trial by jury on all issues so triable; and

(e)   That the plaintiffs be granted such other and
      further relief as the Court deems just and proper.

Respectfully submitted,

WIGGINS LAW GROUP

BY: _____
Cary S. Wiggins
Ga. Bar No. 757657
Irma Espino
Ga. Bar No. 558220

Suite 401
260 Peachtree Street, NW
Atlanta, Georgia 30303
Telephone:  (404) 659-2880
Facsimile:  (404) 659-3274
www.wigginslawgroup.com

Exhibit A - Legend

| Item | Called |
|------|--------|
| Flanigan's Enterprises, Inc. d/b/a Mardi Gras | the Clubs |
| 6420 Roswell Rd., Inc. d/b/a Flashers | |
| Fantastic Visuals, LLC d/b/a Inserection, | the Bookstore |
| | 1997 Ordinance |
| | 2001 Ordinance |
| Flanigan's Enters. of Ga., Inc. v. Fulton County, No. 1:98-cv-2441-GET (N.D. Ga. filed Aug. 25, 1998) | Flanigan's I |
| Flanigan's Enters. of Ga., Inc. v. Fulton County, No. 1:01-cv-3109-RLV (N.D. Ga. filed Nov. 21, 2001) | Flanigan's II |
| Flanigan's Enters. of Ga., Inc. v. Sandy Springs, No. 1:06-cv-1506-RLV (N.D. Ga. filed June 30, 2006) | Flanigan's III |
| Ord. 2005-12-03 | the Alcohol Code |
| Ord. 2005-12-19 | the Adult Zoning Code |
| Ord. 2005-12-20 | the Adult Licensing Code |
| Ordinance to amend Chapter 12, Offenses and Violations, Article 1: General Prohibitions, Section 2, Offenses against public morals, by adding subsection (g) Obscenity and Related Offenses (dated On June 6, 2006) | the Obscenity Ordinance |
| Ord. 2007-09-54 | the Revised Alcohol Code |
| Ord. 2008-08-38 | |
| Ord. 2008-08-39 | |
| Ord. 2008-08-41 | |
| Ord. 2009-04-22 | the 2009 Adult Zoning Code |
| Ord. 2009-04-23 | the 2009 Alcohol Code |
| Ord. 2009-04-24 | the 2009 Obscenity Ordinance |
| Ord. 2009-04-25 | the 2009 Adult Licensing Code |